## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

VICTOR E. TRUJILLO,

        Applicant,

v.                                      CV 08-0012 JH/WPL

TIMOTHY HATCH, WARDEN, AND
THE ATTORNEY GENERAL OF
THE STATE OF NEW MEXICO,

        Respondents.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Victor E. Trujillo was sentenced to twenty-one years in prison for committing sexual offenses against his daughter. After exhausting his state remedies, he filed an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody. He claims that he is actually innocent, that his plea was involuntary, and that his attorney was ineffective. For the reasons that follow, I recommend that the application be denied.

### FACTUAL AND PROCEDURAL BACKGROUND

Trujillo was originally charged with over two-hundred counts of sexual offenses committed against his daughter between 1995 and 2002. (Doc. 9 Ex. N at 3; Pretrial Conference Tape 8/29/02.) By the time of trial, the charges had been narrowed to sixty-nine counts—five counts of criminal sexual penetration (CSP) in the first degree, twenty-nine counts of CSP in the second degree, one count of criminal sexual contact with a minor, and thirty-four counts of contributing to the delinquency of a minor (CDM). (Trial Tape 9, 3/25/03.)

On the first day of trial, the prosecution presented testimony from law enforcement officers

who were involved in the case and from Trujillo's wife, who is also the victim's mother.  (Trial Tapes 5-9, 3/24/03.)  The prosecution also played recordings of phone calls that Trujillo made to family members while he was incarcerated pending trial.  The recordings captured Trujillo imploring his family members, particularly his sister, to persuade the victim to tell the prosecution that she lied.  (Trial Tapes 7-8, 3/24/03.)  The victim did in fact write a letter recanting her allegations in March 2002, but then she retracted the recantation.  (Trial Tape 9, 3/24/03; Pretrial Conference Tape 8/29/02.)  Both Trujillo and his sister were charged in separate cases with tampering with a witness and conspiracy to tamper with a witness.  (Arraignment Tape 7/25/02; Sentencing Tape 1, 12/18/03.)

During the recorded conversation with his sister, Trujillo repeatedly acknowledged that what he did was "wrong" and that he needs "help."  He stated that he did not do what he did because he wanted to, but because he has a "sickness."  (Trial Tapes 7-8, 3/24/03.)

During a recorded conversation with his uncle, the uncle asked Trujillo if he was claiming that his wife framed him.  Trujillo responded that he was not saying "any of it's wrong," he just needed to get out of jail and then they "could deal with this as a family."  (Trial Tape 8, 3/24/03.)  Trujillo stated that they "talked about it at home" and "were going to get things straightened out," but then his wife got the police involved.  When asked by his uncle if they (Trujillo's wife and the victim) "flat out lied," Trujillo replied, "That's not what I'm saying.  I'm saying that's what they need to say to get me out of here."  Trujillo later told his uncle that what they were saying was not "all true," but all of it was not a lie either.  (*Id.*)

On the second day of trial, Trujillo entered into a Plea and Disposition Agreement with the prosecution.  According to the written agreement, which was signed by Trujillo and his attorney, Trujillo agreed to plead guilty to two counts of second-degree CSP and two counts of fourth-degree

CDM.  (Doc. 9 Ex. B.)  In exchange, the prosecution agreed to dismiss the remaining charges in this case as well as the witness-tampering charges.  (*Id.*)  Additionally, the prosecution would not seek more than twenty-one years of imprisonment, would not seek aggravating circumstances, and would not file charges for any other acts then known to the prosecution.[1]  (*Id.*)  The prosecution also orally agreed not to oppose a deferred sentence in Trujillo's sister's case.  (Trial Tape 10, 3/25/03.)

The written agreement advises Trujillo that the penalty for a second-degree felony is nine years in prison and that the penalty for a fourth-degree felony is eighteen months in prison.  The agreement states that sentencing would be in the court's discretion.  It further states that Trujillo was giving up "any and all motions, defenses, objections, or requests which he . . . could assert . . . and [to] imposition of sentence upon him consistent with this Agreement."  (Doc. 9 Ex. B.)

The trial judge accepted the plea in open court.  He began by advising Trujillo that he had an "exposure" of 21 years.  (Trial Tape 10, 3/25/03.)  In response to questioning from the judge, Trujillo stated that he understood that exposure, the charges against him, and the Plea and Disposition Agreement.  He affirmed that no promises, other than those in the agreement, had been made to him regarding his sentence.  Trujillo said he knew that sentencing would be in the judge's discretion.  He stated that his attorney had gone over the Plea and Disposition Agreement with him.  The judge observed that the parties had taken approximately one-and-a-half hours to negotiate the agreement and that Trujillo had spent much of that time in discussions with his attorney and his family.  After these admonishments, the judge asked Trujillo if he still wanted to plead guilty to the four charges with a "total exposure of 21 years."  Trujillo persisted in his guilty plea.  (*Id.*)

_____

[1] Another of Trujillo's daughters claimed that he had sexually abused her, and the prosecution indicated during pretrial proceedings in this case that it intended to file charges based on those claims.  (Pretrial Conference Tape 8/29/02.)

A few months later, Trujillo's attorney filed a Motion to Dismiss or in the Alternative Motion to Set Aside Plea.  (Doc. 9 Ex. C.)  Among other things, this motion asserted that when Trujillo entered his guilty plea, he believed "that the alleged victim would testify in a manner consistent with her safe house interview," but he was subsequently informed that she "was going to support her recantation."  (*Id.*)  At a hearing on the motion, Trujillo's attorney additionally asserted that the victim was eighteen on the dates alleged in the counts to which Trujillo pled guilty.  (Motion Tape 12/4/03.)  The judge denied the motion.  (Doc. 9 Ex. E.)  The judge subsequently imposed the maximum sentence—nine years for each count of CSP and eighteen months for each count of CDM, to be served consecutively, resulting in a total sentence of twenty-one years in prison.  (*Id.* Ex. A.)[2]

Through counsel, Trujillo filed an unsuccessful Motion to Modify Sentence, arguing that the plea was invalid because of the victim's age.  (*Id.* Ex. F, J.)  Trujillo also raised this argument in his direct appeal.  The New Mexico Court of Appeals rejected the argument, reasoning that he waived any challenge to the sufficiency of the evidence by pleading guilty and that the victim's age was a fact that he admitted by pleading guilty.  (*Id.* Ex. O.)

After the New Mexico Supreme Court denied certiorari in his direct appeal, Trujillo filed a pro se Petition for a Writ of Habeas Corpus in the state trial court.  (*Id.* Ex. Q, S.)  He claimed that his attorney told him that he would serve his sentences for the four counts concurrently, resulting in a total sentence of nine years of imprisonment, and that he would be eligible for a "50% good time deduction."  (*Id.* Ex. S at 2.)  With credit for presentence confinement, he would actually serve less than four-and-a-half years.  (*Id.* at 2-3.)  According to Trujillo, he was unaware of the sentence he

---

[2] At the sentencing hearing, the victim did not recant her claims.  In an emotional statement,  she professed that she loved her father and wanted him to get help, but she came forward with her claims because she wanted to make sure "it wouldn't happen anymore."  (Sentencing Tape 2, 12/18/03.)

received until a prison caseworker explained it to him.  (*Id.* at 3.)  He attempted to corroborate his claims regarding the sentence with notarized statements from family members who were present during the plea discussions.  Trujillo also claimed that he had only fifteen minutes to decide whether to accept the plea deal, that he did not have an opportunity to discuss it with his father, and that the prosecution reneged on its promise to drop the charges against his sister.  (*Id.*)

Trujillo alleged that he instructed counsel to withdraw his plea, "affirming [his] innocence," in March 2003.  (*Id.* at 3.)  Although counsel agreed to file a motion to withdraw the plea immediately, he did not do so until October 2003 and even then did not raise the ground upon which Trujillo wished to withdraw the plea, but instead raised different grounds.  (*Id.*)

Although the habeas petition does not make this entirely clear, what Trujillo apparently wanted counsel to raise was a claim of actual innocence or legal or factual impossibility based upon the victim's age.  (*Id.*)  He supported this claim with a copy of the victim's birth certificate. Trujillo asserted that an effective attorney would not advise his client to plead guilty to charges that were factually or legally impossible.  (*Id.* at 5.)  He further contended that counsel would not discuss "such possible issues as police reports, available exculpatory evidence, potential defenses or relevant statutory requirements."  (*Id.*)

An amended habeas petition, arguing only the actual innocence issue, was later filed by an attorney.  (*Id.* Ex. T.)  The trial judge denied both petitions, and the New Mexico Supreme Court denied certiorari.  (*Id.* Ex. X, BB.)

## STANDARD OF REVIEW

In his federal application, Trujillo reiterates the claims raised in his pro se state petition. Because these claims were adjudicated on the merits in state court, this Court cannot grant habeas

5

relief unless the state court decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).  For purposes of 28 U.S.C. § 2254, "clearly established Federal law" includes only Supreme Court precedent interpreting the Constitution.  *Smith v. Dinwiddie*, 510 F.3d 1180, 1186 (10th Cir. 2007).  The writ may also issue if the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2).

To show that a decision is "contrary to" clearly established federal law, an applicant must demonstrate that the state court applied a rule that contradicts the governing law set forth in Supreme Court cases or that it arrived at a different result than the Court has on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 1819 (2007).  To show that a decision involved an unreasonable application of clearly established federal law, an applicant must show that "most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law.  It is not enough that the decision is clearly wrong or that the reviewing court would have reached a contrary decision."  *Maynard*, 468 F.3d at 671.  Instead, "the state court decision must be 'at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable.'"  *Id.* (quoting *Badelle v. Correll*, 452 F.3d 648, 655 (7th Cir. 2006)).  In other words, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254."  *Id.*

DISCUSSION

Trujillo's application essentially raises two claims.  The first claim is that his expectations from the guilty plea were unfulfilled.  Specifically, he expected that his sentence would be shorter and that

6

the charges against his sister would be dropped.  The second claim is that he is actually innocent of the charges to which he pled guilty.  Both of these claims relate to voluntariness of the plea and effective assistance of counsel.

A guilty plea is valid "only if done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences."  *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (internal quotation marks omitted). A guilty plea is invalid if the defendant was not aware of the nature of the charges against him or of the consequences of the plea. *Id.* at 182; *Mabry v. Johnson*, 467 U.S. 504, 509 (1984).

To establish ineffective assistance of counsel, a defendant must satisfy a two-prong test.  First, he must show that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Second, he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id*.  "In the guilty plea context, to establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's error, the defendant would have insisted upon going to trial." *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005) (citing *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)).

### *Unfulfilled Expectations*

Trujillo and his relatives claim that the defense attorney told Trujillo that he would serve no more than four-and-a-half years because his sentences would run concurrently and would be reduced by half as a result of good-time credits.  "A plea may be involuntary where an attorney materially

misrepresents the consequences of the plea; however, standing alone, an attorney's erroneous sentence estimate does not render a plea involuntary." *Id.* For a plea to be held invalid, the defendant must show that the plea was a product of material misrepresentations. In other words, he must show that he relied on the misrepresentations. *United States v. Williams*, 919 F.2d 1451, 1456 (10th Cir. 1990); *see also Cunningham v. Diesslin*, 92 F.3d 1054, 1061 (10th Cir. 1996).

Trujillo's claim is contradicted by the written Plea and Disposition Agreement and his oral plea colloquy with the trial judge. The Plea and Disposition Agreement does not mention concurrent sentences or good-time credits. It states that sentencing would be in the court's discretion. It further declares that the State would "not seek more than 21 years," thus indicating that Trujillo's sentence could be that long. (Doc. 9 Ex. B.) At the plea hearing, Trujillo stated that he understood his sentencing exposure was twenty-one years and he told the judge that, outside the Plea and Disposition Agreement, no promises had been made to him regarding the sentence.

"Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). A "defendant's statements at a plea hearing should be regarded as conclusive in the absence of a believable, valid reason justifying a departure from the apparent truth of those statements." *United States v. Estrada*, 849 F.2d 1304, 1306 (10th Cir. 1988) (internal quotation marks omitted). Trujillo has not offered a believable, valid reason for disregarding his statement to the judge. *See Laycock v. New Mexico*, 880 F.2d 1184, 1186 (10th Cir. 1989) (holding that defendant failed to establish that his counsel materially misrepresented the sentence because the representation was not mentioned in the written plea agreement and the defendant denied that any promises had been made during the plea colloquy).

8

Alternatively, accepting as true the claim of Trujillo and his family members that defense counsel said Trujillo would receive a four-and-a-half-year sentence, Trujillo has not shown, or even alleged, that he relied on this misinformation.  Before he pled guilty, Trujillo was facing sixty-nine charges in this case, additional tampering and conspiracy charges in a related case, and the strong possibility of charges against another victim in yet another case.  It appears that he had a defense to several of the charges in this case.[3]  However, he pled guilty after the jury heard his recorded phone conversations with family members.  In those recordings, he all but confessed to having sexually abused the victim.  Consequently, there was a good probability that he would have been convicted on many of the charges.

By pleading guilty, not only did he limit his convictions in this case to four out of sixty-nine counts, he also avoided enhancement of his sentence through the application of aggravating circumstances, as well as prosecution in two other cases.  The record thus strongly suggests that Trujillo would have pled guilty regardless of the alleged misrepresentation.  *See Bradshaw*, 545 U.S. at 186  ("[I]n evaluating the validity of [the] plea, we are reluctant to accord much weight to his *post hoc* reevaluation of the wisdom of the bargain.  [The defendant] pleaded guilty knowing that the State had copious evidence against him . . . [and he gained certain benefits from the plea].  Under these circumstances, the plea may well have been a knowing, voluntary, and intelligent reaction to a litigation situation that was difficult, to say the least."); *Cunningham*, 92 F.3d at 1062 (holding that plea was voluntary even though counsel erroneously advised defendant that he would serve only half

---

[3] During his cross-examination of the victim's mother, defense counsel established that the family did not live in the prosecuting county on the dates when some of the offenses allegedly occurred.  Her cross-examination testimony also indicated that offenses that were alleged to have occurred one New Year's Eve could not have happened that night.  (Trial Tape 9, 3/24/03.)  And, as discussed below, Trujillo had a defense against several of the charges based on the victim's age.

of his sentence as a result of mandatory parole, where defendant stated in open court during his plea

colloquy that he was not relying on any promises or predictions of a possible sentence made to him

before his plea).[4]

For similar reasons, Trujillo is not entitled to relief based on ineffective assistance of counsel.

The Tenth Circuit has held that a "miscalculation or erroneous sentence estimation by defense counsel

is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel."

*United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993).  More importantly, a defendant's mere

allegation that he would have insisted on going to trial is insufficient to show prejudice.  *Miller v.*

*Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001).  As explained above, Trujillo has not even alleged

that he would have insisted on continuing with the trial and the record suggests the contrary.

Trujillo additionally contends that the prosecution reneged on a promise to drop the charges

against his sister.  The record does not support this contention.

At Trujillo's plea hearing, the prosecutor stated that the prosecution had agreed not to oppose

a deferred sentence in the sister's case.  He did not state that the prosecution had agreed to drop the

charges.  Neither Trujillo nor his attorney disputed the prosecutor's description of the promise.  (Trial

Tape 10, 3/25/03.)

---

[4] In *Blackledge v. Allison*, the Supreme Court disapproved of the summary dismissal of a habeas
petition that alleged that a plea was induced by an unkept sentencing promise.  As stated by the Tenth Circuit,
the *Blackledge* Court "held that a claim based on events alleged to have occurred outside the courtroom, and
upon which the record casts no light, require[s] an evidentiary hearing unless the allegations are so vague or
conclusory as to permit summary disposition."  *Lasiter v. Thomas*, 89 F.3d 699, 702 (10th Cir. 1996).
*Blackledge* was decided at a time when plea bargaining was not openly acknowledged.  The Court stated that
as the practice became more open, a claim that statements made during the plea colloquy were untruthful would
entitle a petitioner to an evidentiary hearing "only in the most extraordinary circumstances."  *Blackledge*, 431
U.S. at 80 n.19.  The Tenth Circuit has "interpreted *Blackledge* to permit summary disposition of habeas
corpus petitions based on claims of unkept promises and misunderstanding when the court record refutes the
claims."  *Lasiter*, 89 F.3d at 703.  Because the record refutes Trujillo's claim, I conclude that an evidentiary
hearing is not warranted.

Because the sister and Trujillo were sentenced on the same day, the sister's sentencing is included in the record filed in this Court.  A probation officer recommended that she receive a suspended sentence with eighteen months of probation.  He did not recommend a conditional discharge or a deferred sentence because there were prior felonies on her record and she had previously done well on a probated sentence.  Based on this, he stated that he did not "know what a deferred would do for her at this point."  (Sentencing Tape 1, 12/18/03.)  The judge (the same judge who presided over Trujillo's case) noted that the prosecution had agreed to a deferred sentence.[5]  The prosecutor (not the prosecutor in Trujillo's case) acknowledged that she was bound by this agreement, but stated that she agreed with the probation officer and she did not "see what good it [a deferred sentence] would do at this point."  (*Id.*)   She stated that she would leave sentencing to the court's discretion.  The judge indicated that he would grant a suspended sentence with eighteen months probation and asked the defense attorney if there would be anything "inappropriate" in doing that.  The attorney responded in the negative and requested that the judge follow the probation department's recommendation.  (*Id.*)

Thus, the record demonstrates that the prosecution did not make the promise alleged by Trujillo and that his sister did not oppose the sentence she received.[6]

The state courts' rejection of Trujillo's claims regarding unfulfilled expectations was not contrary to, and did not involve an unreasonable application of, clearly established federal law.

_____

[5] The judge seemed to be referring to a plea and disposition agreement in the sister's case, rather than to Trujillo's case.

[6] The prosecutor's statements at the sentencing hearing could arguably be construed as a violation of the promise not to oppose a deferred sentence.  *See United States v. Brye*, 146 F.3d 1207, 1211 (10th Cir. 1998).  But because the sister requested the sentence recommended by the probation officer rather than a deferred sentence, this arguable violation is irrelevant.

*Actual Innocence*

Trujillo contends that he is actually innocent of the charges to which he pled guilty because the victim was eighteen when the offenses occurred. Trujillo pled guilty to two counts of criminal sexual penetration on a child thirteen to eighteen years of age and two counts of contributing to the delinquency of a minor. It is an element of both offenses that the victim was under eighteen years old. *See* UJI 14-601, 14-945 NMRA.[7]

Trujillo pled guilty to committing CSP on January 22, 2002 and January 30, 2002, and to committing CDM on the same dates. (Doc. 9 Ex. B.) To establish that the victim was eighteen on those dates, Trujillo relies on a copy of her birth certificate, showing a birth date of December 17, 1983. (Doc. 5 Ex. A.) The state-court record also indicates that the victim was eighteen on the dates in question. At a hearing in July 2002, an attorney stated that the victim was currently eighteen. (Arraignment Tape 7/25/02.) At a hearing the next month, the prosecutor stated that she was currently eighteen. (Pretrial Conference Tape 8/29/02.) At a hearing in March 2003, less than two weeks before Trujillo entered his guilty pleas, comments from both the defense attorney and the

---

[7] In response to Trujillo's certiorari petition from the state habeas court, the State observed that the CSP counts were charged in the alternative as either CSP on a child *or* CSP by the use of force or coercion resulting in personal injury. The State argued that the victim's age is irrelevant to the second alternative. (Doc. 9 Ex. AA at 6.) Respondent does not make this argument in this Court, the State did not make the argument to the state habeas court, and the New Mexico Court of Appeals did not rely on this argument in affirming the convictions. The Plea and Disposition Agreement does not contain the wording of the charges; it simply refers to them by count number and statutory citation. In describing the CSP counts, the Agreement cites the statutory subsections dealing with children and with personal injury. (*Id.* Ex. B.) Behind the Agreement are four pages of the information, containing the four counts cited in the Agreement, but these pages were not incorporated by reference into the Agreement. The CSP counts include the alternative charges. However, when setting forth the charges in open court, the prosecutor only referred to CSP on a child and did not refer to the personal injury alternative. (Trial Tape 10, 3/25/03.) In any event, it is undisputed that the counts for contributing to the delinquency of a minor required the victim to be under eighteen, thus requiring me to analyze the merits of Trujillo's actual innocence argument. Because I conclude that Trujillo is not entitled to relief on his actual innocence claim, I find it unnecessary to address whether relief could also be denied as to the CSP counts on the basis of the alternative charges.

prosecutor indicate that she was eighteen on the dates in question.  (Motions Tape 3/13/03.)  The victim's mother testified on the first day of trial, on March 24, 2003, that the victim was currently nineteen.  (Trial Tape 7, 3/24/03.)

Because the victim was eighteen at the time the offenses were committed, Trujillo cannot be guilty of the charges to which he pled guilty.  The question that remains is whether this circumstance is a valid basis for federal habeas relief.

The term "actual innocence" is used in two ways in habeas jurisprudence.  In one sense, it refers to a way of excusing procedural default.  A defendant who has procedurally defaulted an otherwise valid habeas claim may nevertheless have that claim considered on the merits if he can establish his actual innocence.  *See, e.g. Bousley v. United States*, 523 U.S. 614, 623 (1998); *see also Herrera v. Collins*, 506 U.S. 390, 404 (1993) (explaining that "a claim of 'actual innocence' is . . . a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits").  Because Trujillo has not procedurally defaulted his federal habeas claims, this sense of "actual innocence" does not apply here.

In another sense, the term refers to a freestanding claim for relief.  Trujillo is attempting to assert just such a freestanding claim; he contends that his convictions should be set aside because he is actually innocent.  The Supreme Court has indicated that freestanding claims of actual innocence are not cognizable in habeas.  *See Herrera*, 506 U.S. at 400.  The Court has stated, "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal

proceeding." *Id.*  This is because "federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id.*[8]

The *Herrera* Court left some room to argue that actual innocence claims may be cognizable in certain circumstances.  For example, the Court assumed for the sake of argument "that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417.  Nevertheless, the Tenth Circuit held after *Herrera* that a "claim of innocence . . . itself is not a basis for federal habeas corpus no matter how convincing the evidence." *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998).  The court arguably backed off of this stance somewhat in a subsequent unpublished opinion. *See Pettit v. Addison*, 150 F. App'x 923, 926 & nn.4-5 (10th Cir. 2005).  Other courts have held that freestanding claims of actual innocence may be cognizable in habeas. *See Hazel v. United States*, 303 F. Supp. 2d 753, 760 & n.10 (E.D. Va. 2004) (citing cases).  But because the Supreme Court has never recognized such a claim, it cannot be said that the state courts unreasonably applied Supreme Court precedent in rejecting Trujillo's actual innocence claim.

Under *Herrera*, a defendant who is actually innocent can obtain habeas relief only by showing "an independent constitutional violation occurring in the underlying state criminal proceeding."  506 U.S. at 400; *see also Hazel*, 303 F. Supp. 2d at 759 ("[A]ctual innocence claims must be

---

[8] The issue discussed in *Herrera* must be distinguished from a situation in which a defendant pleads guilty to facts that are subsequently determined not to be criminal. *See, e.g., United States v. Barnhardt*, 93 F.3d 706, 708 (10th Cir. 1996); *United States v. Barboa*, 777 F.2d 1420, 1423 n.3 (10th Cir.1985).  Here, the facts alleged by the State undisputedly constituted crimes.

accompanied by a constitutional violation . . . to warrant habeas relief."). No independent constitutional violation is evident in this case.

First, unless a defendant claims factual innocence while pleading guilty, there is no federal constitutional requirement for the trial court to ascertain a factual basis for the plea. *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971); *see also Berget v. Gibson*, No. 98-6381, 1999 WL 586986, at *5-*6 (10th Cir. Aug. 5, 1999) (unpublished) (noting that the circuits are in agreement on this issue). Trujillo did not claim that he was innocent when he pled guilty.

Second, under the unique circumstances of this case, Trujillo's actual innocence does not render his plea involuntary. The victim's age is not newly discovered evidence, nor is it evidence that the prosecution hid from the defense. Trujillo does not allege that he was unaware of her age when he pled guilty. That would be a tough allegation for him to prove in any event, given that he is the victim's father and was able to produce a copy of her birth certificate. Even if he were otherwise unaware of the birth date of his first child, issues regarding her age on different dates alleged in the information were brought up several times during pretrial proceedings in open court. When Trujillo entered his plea in open court, the prosecutor recounted the charges to which he was pleading guilty, including the dates of the offenses. It cannot be said that Trujillo was unaware of the nature of the charges against him.

Third, and again under the unique circumstances of this case, it was not objectively unreasonable for defense counsel to recommend that Trujillo accept the plea bargain even though Trujillo was innocent of the particular charges to which he pled guilty. As explained above, it was likely that Trujillo would be convicted of many of the sixty-nine charges against him. By pleading guilty, he limited his number of convictions to four and his sentencing exposure to twenty-one years.

He also eliminated the witness tampering and conspiracy charges that were pending against him, as well as the possibility that he would be charged with offenses against another victim.

Even if it was objectively unreasonable for defense counsel to recommend that Trujillo plead guilty, he has not shown a reasonable probability that he would have insisted on continuing with trial but for counsel's error. As noted above, he has not alleged that he would have continued with the trial, and he pled guilty after he and the jury heard his virtual confession to sexually abusing his daughter.

The State courts' rejection of Trujillo's actual innocence claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law.

### *Remaining Allegations*

Trujillo asserts that he had only fifteen minutes to decide whether to accept the plea bargain and that he did not have an opportunity to discuss it with his father. He has not shown that these circumstances rendered the plea involuntary. It is clear from the record, and from the statements submitted by his relatives, that Trujillo was able to discuss the plea with some family members.

Finally, Trujillo asserts that defense counsel would not discuss police reports, exculpatory evidence, potential defenses, or relevant statutory requirements with him. These assertions do not warrant habeas relief because they are conclusory and without supporting factual averments. *See United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994). Moreover, the recording of the first day of trial indicates that counsel was well prepared. His cross-examination of the victim's mother raised valid defenses to some of the charges.

### CONCLUSION

For the reasons stated above, I recommend that:

16

1) Trujillo's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (Doc. 5) be denied;

2) Trujillo's Motion for the Appointment of Counsel (Doc. 3) be denied; and

3) this cause be dismissed with prejudice.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1).  **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition.  If no objections are filed, no appellate review will be allowed.**

---

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE